UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
TRUSTEES OF THE METAL POLISHERS
LOCAL 8A–28A FUNDS,

                Plaintiffs,              **MEMORANDUM & ORDER**
                                                                           18-CV-3816 (PKC) (RLM)

       - against -

NU LOOK INC. and JASON TOKARSKI,
Individually,

                Defendants.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Plaintiffs Trustees of the Metal Polishers Local 8A–28A Funds (the "Trustees") commenced this action against employers Nu Look Inc. ("Nu Look") and Jason Tokarski ("Tokarski"), pursuant to § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and § 502(a)(3) and § 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, alleging that Nu Look and Tokarski failed to make contributions to the Trustees' jointly administered multi-employer labor management trust funds (the "Funds") as required by Nu Look's collective bargaining agreement ("CBA"). (*See generally* Complaint ("Compl."), Dkt. 1.) The Trustees seek to recover certain delinquent contributions to the Funds with interest, liquidated damages, attorneys' fees, and court costs. (*See id.* at ECF[1] 6.) Currently before the Court is the Trustees' motion for default judgment. (Plaintiffs' Motion for Entry of Default Judgment ("Pls.' Mot."), Dkt. 12.) For the reasons set forth below, Plaintiffs' motion is granted solely as to liability, attorneys' fees, and costs. Plaintiffs' requests for delinquent

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

contributions, interest, and liquidated damages are denied; however, the Court grants Plaintiffs 30 days to provide adequate documentation, as discussed herein, with respect to those damages.

## BACKGROUND

Defendant Tokarski serves as the Chief Executive Officer of Nu Look (*see* CBA, Dkt. 12-1, at ECF 29), which is a party to a CBA with the Metal Polishers Production and Novelty Workers Local Union 8A–28A (the "Union") (*see* Compl., Dkt. 1, ¶ 6; CBA, Dkt. 12-1, at ECF 29).[2] The Trustees are fiduciaries of the Funds, which operate as an employee benefit plan under ERISA that provides fringe benefits to eligible employees, retirees, and their dependents. (*Id.* ¶ 6.) Nu Look makes contributions to the Funds on behalf of its employees, retirees, and their dependents pursuant to its CBA with the Union. (*Id.*)

The CBA requires Nu Look to submit contribution reports, setting forth the hours that each of its employees have worked and the amount of contributions due according to rate schedules set forth in the CBA. (*Id.* ¶ 13.) Nu Look is then required to remit monetary contributions to the Funds in accordance with the rate schedules. (*Id.*) Between November 1, 2017 and May 31, 2018, however, Nu Look failed to submit the required contribution reports and make retirement benefit contributions to the Funds. (*Id.* ¶ 15.) According to the complaint, the minimum amount that Nu Look owes to the Funds for this period that has yet to be remitted is $7,896. (*Id.*)

## PROCEDURAL HISTORY

The Trustees filed this action on July 2, 2018. On July 12, 2018, the Trustees submitted an affidavit of service, indicating that Nu Look was served on July 10, 2018. (*See* Affidavit of Service, Dkt. 7.) No affidavit of service was ever filed as to Tokarski, and the Trustees took no

---

[2] The factual background is taken from the complaint, the well-pleaded allegations of which the Court accepts as true. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997) ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted.").

further action in the case for over five months. On December 17, 2018, the Honorable Roanne L. Mann, Chief Magistrate Judge, issued an Order to Show Cause ("OTSC") why the action should not be dismissed for lack of prosecution pursuant to Federal Rule of Civil Procedure ("Rule") 41(b). (*See* OTSC, Dkt. 8.) The Trustees responded on December 19, 2018 by indicating that they intended to move for default judgment within 30 days. (*See* OTSC Response, Dkt. 9.) On January 8, 2019, the Trustees filed a request for a Certificate of Default as to Nu Look. (Request for Certificate of Default, Dkt. 10.)[3]

To date, Nu Look has failed to appear, plead, or otherwise respond to the complaint. The applicable time limit for answering or otherwise responding to the complaint has expired (*see* Affidavit of Service, Dkt. 7), and the Clerk of Court entered default as to Nu Look on January 10, 2019. (Entry of Default, Dkt. 11.) The Trustees filed a motion for default judgment on January 11, 2019. (Pls.' Mot., Dkt. 12.) Nu Look has neither filed any response to the Trustees' motion nor moved to vacate the entry of default.

## STANDARD OF REVIEW

Obtaining a default judgment under Rule 55 is a two-step process. "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114,

---

[3] Because the Trustees have (1) failed to prove service as to Tokarski in response to Judge Mann's order, and (2) filed a default judgment motion against only Nu Look, the Court concludes that the Trustees intend to withdraw their claims against Tokarski. *See Garden City Boxing Club, Inc. v. Focused Enters., Ltd.*, No. 06-CV-4874 (FB) (RER), 2007 WL 708847, at *1 (E.D.N.Y. Mar. 6, 2007) ("[B]ecause plaintiff failed to file proof of service against the individual defendants, the Court considers plaintiff's [default judgment] motion only as to corporate defendant . . . ."); *Lemus v. Manhattan Car Wash, Inc.*, No. 06-CV-15486 (MHD), 2010 WL 4968182, at *12 n.6 (S.D.N.Y. Nov. 24, 2010) (stating that where a plaintiff "wish[es] to obtain a judgment that grants him an award of damages, he should either move against all of the defendants at once, or seek default judgment from some of the defendants and withdraw his claims against the others"). Those claims are, therefore, dismissed without prejudice.

128 (2d Cir. 2011). Accordingly, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 108; *see also United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006). "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the Court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128. "Assuming the plaintiff demonstrates proper service, the decision to grant a motion for a default judgment lies in the sound discretion of the trial court." *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007). "A [defendant's] default constitutes an admission of all well-pleaded factual allegations in the complaint . . . ." *Garden City Boxing Club, Inc. v. Batista*, No. 05-CV-1044 (FB) (MDG), 2007 WL 4276836, at *2 (E.D.N.Y. Nov. 30, 2007). However, "it is also true that a district court need not agree that the alleged facts constitute a valid cause of action," *Mickalis*, 645 F.3d at 137 (quotation omitted), and the Court is therefore "required to determine whether [the plaintiff's] allegations establish [the defendant's] liability as a matter of law," *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Further, "it is well established that '[w]hile a party's default is deemed to constitute a concession of all well[-]pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Rather, "[t]here must be an evidentiary basis for the damages sought by [the] plaintiff." *Id.* "Rule 55(b)(2) provides that when granting a default judgment, if it is necessary to take account or to determine the amount of damages or to establish the truth of any averment by evidence[,] . . . the court may conduct such hearings or order

such references as it deems necessary and proper." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quotation omitted). Nevertheless, "detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." *Chanel, Inc. v. Louis*, No. 06-CV-5924 (ARR) (JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009).

## DISCUSSION

### I. Liability

The Trustees bring this action against Nu Look to enforce the Funds' rights under ERISA and as a third-party beneficiary to Nu Look's CBA with the Union. (*See* Compl., Dkt. 1, ¶¶ 1, 17.) As relevant to this action, ERISA provides that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. The LMRA grants United States district courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Similarly, "ERISA vests the [C]ourt with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." *Trs. of Local 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-CV-322 (SJ) (ALC), 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011) (quotation omitted). Further, because the Funds operate as an employee benefit plan, the Trustees are authorized by ERISA to enforce the CBA and seek equitable relief. *See Gesauldi v. Dan Yant Inc.*, 6 F. Supp. 3d 264, 269 (E.D.N.Y. 2014) ("Plan fiduciaries may bring civil actions to enforce the provisions of the collectively bargained agreement and obtain equitable relief." (citing 29 U.S.C. § 1132(a)(3))).

The undisputed allegations in the complaint, as supported by the documents on which the complaint necessarily relies, establish Nu Look's liability under ERISA. The Funds are a multi-

5

employer plan and employee benefit plan, the Trustees are plan fiduciaries, and Nu Look is an employer as defined by ERISA. (*See* Compl., Dkt. 1, ¶¶ 5–6, 10.) *See also* 29 U.S.C. §§ 1002(3), (5), (21)(A), 37, 1132(d)(1). At all relevant times, Nu Look was party to a CBA with the Union. (Compl., Dkt. 1, ¶ 12; CBA, Dkt. 12-1, at ECF 29.) Pursuant to the CBA, Nu Look is obligated to provide contribution reports "setting forth the hours that each of its employees worked" and to make monthly contributions "pursuant to the rate schedules set forth in the CBA." (Compl., Dkt. 1, ¶ 13.) Accepting the Trustees' allegations as true, Nu Look failed to comply with these provisions of the CBA between November 1, 2017 and May 31, 2018. Accordingly, the Trustees have established that Nu Look is liable under 29 U.S.C. § 1145.[4]

## II. Damages

Having established Nu Look's liability under ERISA, the Court must separately consider the appropriate measure of damages. ERISA provides that, in any action brought by a fiduciary for or on behalf of a plan to enforce rights under 29 U.S.C. § 1145 and in which the fiduciary prevails, the court shall award: "(1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney[s'] fees and costs; and (5) [any] other legal or equitable relief [that] the court deems appropriate." *Gesauldi*, 6 F. Supp. 3d at 270 (citing 29 U.S.C. § 1132(g)(2)). The Trustees' motion for default judgment seeks a total of $13,243.32 in damages, consisting of: (1) $7,896 for delinquent fund contributions; (2) $403.12 in interest; (3) $1,579.20 in liquidated damages; (4) $2,900 in attorneys' fees; (5) and $465 in costs.

---

[4] The relief available to the Trustees under 29 U.S.C. § 1145 is the same as that available under the LMRA. *See Gesauldi*, 6 F. Supp. 3d at 269 n.3 (observing that both ERISA and the LMRA "provide[] a federal cause of action for violation of contracts between an employer and a labor organization" (quotation omitted)). Accordingly, the Court need not address Nu Look's liability under the LMRA. *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery.").

(*See* Declaration in Support of Plaintiffs' motion for Entry of Default Judgment and Damages ("Kugielska Decl."), Dkt. 12-1, ¶ 24.) To support their request for damages, the Trustees submit:

(i) the declaration of Trustees' counsel, Lauren M. Kugielska, providing contemporaneous billing records (*id.* ¶ 19) and a copy of the Plaintiffs' CBA, signed by Jason Tokarski on behalf of Nu Look (CBA, Dkt. 12-1, at ECF 7–29);

(ii) a statement of damages, outlining the amount of delinquent fund contributions, interest owed, liquidated damages, attorneys' fees, and additional costs (Statement of Damages, Dkt. 12-2); and

(iii) the declaration of Joseph Ramaglia, Fund Administrator of the Metal Polishers Local 8A–28A Funds (Declaration of Joseph Ramaglia in Support of Plaintiffs' Motion for Entry of Default Judgment and Damages ("Ramaglia Decl."), Dkt. 12-4), providing Plaintiff's calculation of fund contributions owed by Defendants from November 2017 through May 2018 (Delinquent Contribution Estimate, Dkt. 12-4, at ECF 4).

On review, the Court concludes that while the Trustees' submissions are sufficient to establish the amount of their attorneys' fees and costs, they are inadequate to verify the appropriate amount of Nu Look's delinquent contributions, the amount of interest thereon, and the amount of liquidated damages to which the Trustees are statutorily entitled.

    **A.**    **Delinquent Fund Contributions, Interest, and Liquidated Damages**

The CBA provides that Nu Look must contribute to the Funds' Retirement Fund according to the following schedule:

| RETIREMENT FUND CONTRIBUTIONS | | | | | |
|---|---|---|---|---|---|
| **Classification** | **Effective 1-Jun-14** | **Effective 1-Jun-15** | **Effective 1-Jun-16** | **Effective 1-Jun-17** | **Effective 1-Jun-18** |
| Class A Journeyperson | $1.91 ($0.10) | $2.02 ($0.11) | $2.13 ($0.11) | $2.24 ($0.11) | $2.35 ($0.11) |
| Class B. Journeyperson | $1.66 ($.0.08) | $1.74 ($0.08) | $1.83 ($0.09) | $1.93 ($0.10) | $2.03 ($0.10) |
| Assistant Journeyperson | $1.33 ($0.05) | $1.38 ($0.05) | $1.43 ($0.05) | $1.49 ($0.06) | $1.55 ($0.06) |

(CBA, Dkt. 12-1, at ECF 19.) The amounts set forth in this schedule must be contributed "on behalf of each employee in such classifications for each straight time hour worked or paid for in

7

any work week, including the straight time portion of overtime pay." (*Id.*) Nevertheless, the Trustees have not provided any information about the number of individuals employed by Nu Look during the relevant time period or in the prior months, the classification of Nu Look's employees for purposes of the contribution schedule, or the number of hours worked by Nu Look's employees during the relevant time period.

Rather, the Trustees have simply submitted a table, titled "401(k) Retirement Fund Nu[]Look Inc., Estimate Delinquent Contribution Owe." (*See* Delinquent Contribution Estimate, Dkt. 12-4, at ECF 4.) This table lists the hours worked by Nu Look employees, collectively, from November 2017 through May 2018 as 480 hours per month and calculates the contribution owed as $1,128 per month, for a total of $7,896 in delinquent contributions. (*Id.*) There is no information in the record, however, to independently support the Trustees' calculation of hours or contributions owed.[5]

Accordingly, at this time, the Court cannot grant the Trustees' motion for default judgment as to its request for the amount of delinquent contributions owed. *Cf. Trs. of the Elevator Constructors Union Local No. 1 Annuity & 401(k) Fund v. Keystone Iron & Wire Works, Inc.,* No. 16-CV-329 (KAM) (LB), 2017 WL 9487195, at *5 (E.D.N.Y. Jan. 30, 2017) (finding that the declaration of the fund manager, a copy of the CBA, *defendant's remittance reports, plaintiffs'*

---

[5] The Court notes that Fund Administrator Joseph Ramaglia's declaration states that he is "familiar with the payment histories of employers obligated to make contributions to the Funds," and explains that the Delinquent Contribution Estimate table is "a copy of the Funds['] report for the defendant." (Ramaglia Decl., Dkt. 12-4, ¶¶ 1, 5.) The complaint also states that the Trustees' demand for $7,896 in damages is "based upon employer remittance reports." (Compl., Dkt. 1, ¶ 16.) Though it is possible, if not likely, that the Trustees could support their request for damages based on Nu Look's past remittance reports, *see Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Artharee*, 48 F. Supp. 3d 25, 31 (D.D.C. 2014) (collecting cases), they must first submit such supporting documentation to the Court.

8

*calculation of interest chart*, along with the declaration of plaintiffs' counsel with attached contemporaneous billing records were sufficient to allow the Court to calculate damages). Because the interest owed on the delinquent contributions[6] and the amount of liquidated damages provided for under ERISA[7] necessarily depend on an accurate accounting of the amount of delinquent contributions owed, the Court is also unable to grant the Trustees' requests for those damages.

**B.     Attorneys' Fees and Other Costs**

1.     <u>Attorneys' Fees</u>

Having established Nu Look's liability, the Trustees are statutorily entitled to reasonable attorneys' fees and costs. *See* 29 U.S.C. § 1132(g)(2)(D). Based on the Trustees' submissions, the Court finds that they have provided adequate documentation to support this aspect of their motion.[8]

"[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160

---

[6] "Under ERISA, where an employer fails to remit required contributions to a plan, the plan is entitled to interest on the unpaid contributions, calculated at the rate stated in the plan or, if unstated, the rate prescribed in 26 U.S.C. § 6621." *Gesauldi*, 6 F. Supp. 3d at 271. Interest is to be calculated at the rate provided for in the benefit plan, or, if the plan does not specify a rate, the Federal Short-Term rate as set by the Treasury Department plus three percentage points. *See* 29 U.S.C. § 1132(g)(2)(B); *see also* 26 U.S.C. § 6621.

[7] ERISA provides for liquidated damages constituting the greater of (i) interest paid on the unpaid contributions, or (ii) an amount under the plan in an amount not in excess of twenty percent of the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(C); *see also Labarbera v. David Liepper & Sons, Inc.*, No. 06-CV-1371 (DLI) (JMA), 2006 WL 2423420, at *4 (E.D.N.Y. July 6, 2006).

[8] The Court also grants the Trustees' counsel leave to request additional attorneys' fees in connection with any subsequent submission of additional documentation to support the Trustees' claims for delinquent contributions, interest, and liquidated damages. In that event, the Trustees' counsel will include the necessary billing records to support their request for additional attorneys' fees.

(2d Cir. 1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The number of hours expended must be supported by contemporaneous time records. *Bd. of Trs. of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund & Annuity Fund v. Super Eagle Contracting, Inc.*, No. 12-CV-0399 (KAM) (RER), 2013 WL 802034, at *4 (E.D.N.Y Jan. 16, 2013). "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee,'" but ultimately, what constitutes a reasonable fee lies in the discretion of the district court. *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).

Other courts in this Circuit have used the prevailing hourly rate in the applicable federal district and "multipl[ied] that rate by the reasonable number of hours expended[] to determine a presumptively reasonable fee." *Trs. of the Elevator Constructors Union Local No. 1 Annuity & 401(k) Fund*, No. 16-CV-329 (KAM) (LB), 2017 WL 9487195, at *5 (E.D.N.Y. Jan. 30, 2017). An hourly rate is "what a reasonable, paying client would be willing to pay," bearing in mind that a "reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184, 190. For ERISA default actions, recent cases in the Eastern District of New York have found that "reasonable hourly rates for [the Eastern District] range from . . . $200–$300 for senior associates." *Ferrara v. Prof'l Pavers Corp.*, No. 11-CV-1433 (KAM) (RER), 2013 WL 1212816, at *2 (E.D.N.Y. Mar. 23, 2013); *see also Annuity, Pension, Welfare, & Training Funds of the Int'l Union of Operating Eng'rs, Local 14–14B v. A.J.S. Trucking & Excavating Corp.*, No. 06-CV-0701 (NG) (JMA), 2007 WL 539152, at *4 (E.D.N.Y Feb. 16, 2007) (finding an hourly rate of $250 as reasonable for counsel in an ERISA case).

Here, Plaintiff requests an hourly rate of $250 for 11.6 hours of work performed by Lauren M. Kugielska. Kugielska is an associate at the firm of Barnes, Iaccaino & Shepherd, LLP, and is lead counsel for the Trustees. Her claim of 11.6 hours of work is supported with contemporaneous time records and sufficiently detailed billing entries. (Kugielska Decl., Dkt. 12-1, ¶ 19.) Further, the number of hours that Kugielska has spent working on this case is reasonable. *See Gesauldi v. Interstate Masonry Corp.*, No. 12-CV-0383 (NGG) (VMS), 2014 WL 1311709, at *13 (E.D.N.Y. Mar. 25, 2014) (finding a total of 15.1 hours billed as reasonable); *see also Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Eng'rs, Local 14–14B v. N. Am. Iron Works, Inc.*, No. 07-CV-2257 (DLI) (JMA), 2008 WL 4724507, at *5 (E.D.N.Y. Oct. 24, 2008) (awarding fees for a total of 14 hours for an ERISA default case). In light of the award of substantially similar attorneys' fees requests in comparable cases in this district, the Court finds that the Trustees' request for $2,900 in attorneys' fees is reasonable and supported by the record.

2. Other Costs

"A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney[s'] ordinary overhead." *Trs. of the Pavers & Rd. Builders Dist. Council Welfare v. Arbor Concrete Corp.*, No. 15-CV-2481 (FB) (RML), 2015 WL 9598872, at *5 (E.D.N.Y. Dec. 15, 2015) (citing *LaBarbera*, 2006 WL 3422645, at *4); *see also* 29 U.S.C. § 1132(g)(2)(D). The Trustees seek $465 in costs, which consists of a $400 fee for filing the complaint, and a process server fee of $65 for service of the complaint. Filing fees and service of process fees are typically awarded as additional costs. *See Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d. 277, 290 (E.D.N.Y. 2010). Accordingly, the Court finds the requested $465 in costs to be reasonable.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for default judgement is granted in part. The Court awards the Trustees $2,900 in reasonable attorneys' fees and $465 in costs. Further, the Trustees shall have thirty (30) days from the date of this Order to submit adequate documentation supporting their request for damages in the amount of Nu Look's delinquent contribution, interest thereon, and liquidated damages provided under ERISA, as well as attorneys' fees incurred in preparing that submission. If the Trustees' fail to file further supporting documentation within the time allowed, the Court will direct the Clerk to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 31, 2019
      Brooklyn, New York