**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
**TRUSTEES OF THE METAL POLISHERS LOCAL 8A-28A FUNDS,**

                                      **Plaintiffs,**   **MEMORANDUM AND ORDER**

    -against-

                                                  **18-CV-3816 (PKC)**

**NU LOOK INC., et al,**

                                      **Defendants.**
-----------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       Currently pending before this Court, on a referral from the Honorable Pamela K. Chen, is an amended motion for default judgment filed by plaintiffs Trustees of the Metal Polishers Local 8A-28A Funds ("plaintiffs") against defendant Nu Look Inc. ("defendant" or "Nu Look"), for alleged violations of Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185, and Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145.  See Amended Motion for Default Judgment (Oct. 7, 2019) ("Amended Mot."), Electronic Case Filing Docket Entry ("DE") #16; Order Referring Motion (Oct. 8, 2019); see generally Complaint (July 2, 2018) ("Compl."), DE #1.

       For the reasons that follow, this Court respectfully recommends that plaintiffs' amended motion for default judgment be denied in its entirety, and that the District Court award no delinquent benefit fund contributions, interest, liquidated damages, or additional attorneys' fees.

## BACKGROUND

This Court assumes basic familiarity with the factual background and procedural posture leading up to, and set forth in, Judge Chen's July 31, 2019 Memorandum and Opinion.  See Memorandum & Order (July 31, 2019) ("7/31/19 M&O"), DE #13.  That decision dismissed plaintiffs' claims against the individual defendant Jason Tokarski, for lack of service, and granted plaintiffs' motion for default judgment against defendant Nu Look Inc. with respect to liability, attorneys' fees, and costs, but denied without prejudice plaintiffs' request for delinquent contributions, interest, and liquidated damages because plaintiffs failed to provide the District Court with adequate documentation.  See id.

In denying plaintiffs' motion for default judgment with respect to delinquent contributions, interest, and liquidated damages, Judge Chen reasoned that plaintiffs had not provided "any information about the number of individuals employed by Nu Look during the relevant time period or in the prior months, the classification of Nu Look's employees for purposes of the contribution schedule, or the number of hours worked by Nu Look's employees during the relevant time period"; rather, plaintiffs had simply submitted a table listing the hours collectively worked by Nu Look employees between November 2017 and May 2018 (3,360 hours), the total hours worked per month during that same time period (480 hours), and the delinquent contributions alleged to be owed per month ($1,128.00 per month) and in total ($7,896.00).  See 7/31/19 M&O at 8; see also Estimate[d] Delinquent Contributions Table (Jan. 11, 2019) ("1/11/19 Table"), DE #12-4.  Ultimately, because there was "no information in the record . . . to independently support [plaintiffs'] calculation of hours or contribution owed[,]" the District Court denied plaintiffs' motion for default judgment as to their request for delinquent

2

contributions, as well for interest, and liquidated damages.  Id.[1]  In doing so, Judge Chen assumed, based on plaintiffs' pleading and motion papers, that plaintiffs "could support their request for damages based on Nu Look's past remittance reports," adding that "they must first submit such supporting documentation to the Court."  Id. at 8 n.5.  She then gave plaintiffs until August 30, 2019, "to submit adequate documentation supporting their request for damages in the amount of [defendant's] delinquent contribution[s], interest thereon, and liquidated damages under ERISA, as well as attorneys' fees" incurred by plaintiffs in preparing their then-upcoming submission.  See id. at 12.

On October 7, 2019, after receiving multiple extensions, and being repeatedly reminded of the need to file "documentation supporting . . . the amount of Nu Look's delinquent contribution[s]," Order (Aug. 27, 2019); see Order (Sept. 19, 2019), plaintiffs filed an amended motion for default judgment, see Amended Mot., proffering a single remittance report, covering one month *predating* the seven months at issue in this case, see October 2017 Remittance Report (Oct. 7, 2019) ("Remittance Report"), DE #20-3 (Ex. C).

Upon referral of the renewed motion to the undersigned magistrate judge, this Court issued an October 10, 2019 Scheduling Order noting additional deficiencies in plaintiffs' motion papers.  See Scheduling Order (Oct. 10, 2019) ("10/10/19 Order"), DE #22.  First, although plaintiffs' Complaint seeks unpaid retirement benefit fund contributions "in the minimum amount of $7,896.00 for the period of November 1, 2017 through to [sic] and including May 31, 2018[,]" Compl. ¶ 15, and plaintiffs' original motion for default judgment sought to recover that same amount, see 7/31/19 M&O at 6-7 (citing Declaration of Lauren Kugielska in Support of

---

[1] The District Court denied plaintiffs' request for interest owed on the delinquent contributions and for liquidated damages under ERISA because such sums depend on an accurate accounting of the amount of delinquent contributions owed.  See 7/31/19 M&O at 9.

3

Plaintiffs' Motion for Entry of Default Judgment and Damages (Jan. 11, 2019) ("Kugielska Decl.") ¶ 24, DE #12-1); 1/11/19 Table, plaintiffs' pending amended motion for default judgment seeks $23,446.50 in unpaid contributions for the same period, see Amended Proposed Default Judgment (Oct. 7, 2019) ("Proposed Judgment"), DE #19; Supplemental Declaration of Joseph Ramaglia in Support of Plaintiffs' Motion for Entry of Default Judgment and Damages (Oct. 7, 2019) ("Ramaglia Supp. Decl.") ¶ 6, 11, DE #20.  This Court therefore ordered plaintiffs to show cause, by October 18, 2019, as to why their damages should not be limited to those sought in the Complaint, pursuant to Rule 54(c) of the Federal Rules of Civil Procedure ("FRCP").  See 10/10/19 Order at 2.  Second, this Court observed, "the amount plaintiffs now seek to recover includes allegedly unpaid union dues even though the union is not a plaintiff in this action."  Id. (noting that "[e]ven if there were a designation or assignment of plaintiffs as collection agents for the union, that would not confer standing on plaintiffs to bring claims on the union's behalf") (citation omitted).

On October 18, 2019, counsel for plaintiffs submitted a letter that only partially responded to the Court's October 10th order.  See Letter (Oct. 18, 2019) ("10/18/19 Ltr."), DE #23.

## DISCUSSION

### I. General Legal Principles

As Judge Chen has already granted plaintiffs' first motion for default judgment with respect to liability, this Court's inquiry is limited to a determination of the appropriate measure of damages to be awarded to plaintiffs.  Even when liability has been sufficiently alleged, the amount of damages that a plaintiff claims to have suffered is not deemed to be true, and the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable

4

certainty." Credit Lyonnais Sec. (USA) Inc. v. Alcantara, 183 F.3d 151, 1155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). While the Court is authorized under Rule 55(b)(2) to conduct a hearing on damages, a hearing is not required. See Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (Rule 55(b)(2) "allows but does not require the [court] to conduct a hearing."). Rather, the Court may evaluate and analyze affidavits and other documentary evidence regarding the damages sustained. See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989) (finding that a "court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum [of damages]"). "It is well-settled that the burden is on plaintiff to establish entitlement to recovery." Akhalia v. Guardia, No. 11-CV-531 (ARR)(CLP), 2013 WL 2395974, at *7 (E.D.N.Y. May 31, 2013).

**II.     Plaintiffs' Damages**

A plaintiff that has established liability under Section 515 of ERISA is entitled to an award of "(A) [] unpaid contributions," "(B) interest on the unpaid contributions," "(C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan . . . ," "(D) reasonable attorney's fees and costs," and "(E) such other legal or equitable relief as the Court may deem appropriate." 29 U.S.C. § 1132(g)(2).

Plaintiffs argue that under ERISA, they are entitled to recover unpaid contributions, interest, and liquidated damages pursuant to their Collective Bargaining Agreement with defendant. See Amended Declaration of Lauren Kugielska in Support of Plaintiffs' Motion for Entry of Default Judgment and Damages (Oct. 7, 2019) ("Kugielska Amended Decl.") ¶ 11, DE #17; see also Agreement Between International Union of Painters and Allied Trades Metal Polishers Production and Novelty Workers Local Union 8A-28A / District Council 9 / IUPAT

and NuLook Inc [sic] (Oct. 7, 2019) ("CBA"), DE #20-1 (Ex. A).  Specifically, plaintiffs now request $23,446.50 in unpaid contributions for the period from November 1, 2017 through May 31, 2018, consisting of $2,206.50 per month for each month from November 2017 through February 2018, and $4,873.50 for the period from March 2018 through May 2018.  See Ramaglia Supp. Decl. ¶ 6.[2]  Upon review of plaintiffs' motion papers and supporting documents, the Court is unable to determine the delinquent contributions owed for the period specified, and, accordingly, recommends that the District Court deny plaintiffs' request for unpaid delinquent contributions, interest, and liquidated damages in its entirety and with prejudice.

### A. Plaintiffs' Amended Default Judgment Motion Violates Rule 54(c) of the FRCP

As previously noted, plaintiffs' Complaint alleges that defendant owes unpaid retirement benefit fund contributions in the minimum amount of $7,896.00 for the period of November 1, 2017 through May 31 2018, plus contractual interest and liquidated damages.  See Compl., *ad damnum* clause.  Plaintiffs' original motion for default judgment similarly sought to recover that $7,896.00 sum.  See Kugielska Decl. ¶ 13.  When plaintiffs filed their amended default judgment motion papers, however, they increased the amount sought to $23,446.50 in unpaid contributions, plus interest ($1,640.90) and liquidated damages ($4,689.30).  See 10/10/19 Order at 2; see also Proposed Judgment.

As an initial matter, defendant's current demand for unpaid contributions totaling $23,446.50 runs contrary to Rule 54(c) of the Federal Rules of Civil Procedure and case law regarding the same.  Rule 54(c) states that "[a] default judgment must not differ in kind from, or

---

[2] The monthly unpaid contributions claimed to be due for each month from November 2017 through February 2018 ($2,206.50) are lower than the monthly amounts due for March through May 2018 ($4,873.50) because Nu Look "paid contributions due to the Metal Polishers Union Local 8A-28A Welfare Fund for the [first] period" but not for the latter period.  Ramaglia Supp. Decl. ¶ 7.

6

exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Rule limits a plaintiff's default judgment recovery to the relief sought in the complaint, and "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer." Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007); see also Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Daniel Weintraub & Assocs., Inc., No. 04-CV-2611 (FB)(CLP), 2007 WL 4125453, at *5 (E.D.N.Y. Nov. 16, 2007) ("The rationale for this rule is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action.") (internal quotation marks and citations omitted). This "sensible" rule prevents a plaintiff from seeking additional amounts that were not expressly included in the pleading's demand for judgment. See Silge, 510 F.3d at 160.

On October 10, 2019, this Court issued an order directing plaintiffs to show cause why they should not be limited to the damages sought in the Complaint in accordance with Rule 54(c). See 10/10/19 Order at 2. In response, plaintiffs posit that the damages demanded in their amended default judgment papers conform with those specified in the Complaint, and therefore, do not run afoul of Rule 54(c). See 10/18/19 Ltr. at 1. Specifically, they cite the fact that their Complaint requests "[d]amages in the amount of any additional contributions and/or delinquency charges, which may become due and owing during the course of the instant action, which amount shall include the principal plus interest and liquidated damages." Id. (citing Compl.) Plaintiffs are correct that Rule 54(c) permits a court to award damages accruing during the pendency of the litigation if the pleading put the defendant on notice that the plaintiff might seek such damages. See Finkel v. Triple A Grp., Inc., 708 F.Supp.2d 277, 282 (E.D.N.Y. 2010)

7

(citing cases and treatise). Because the Complaint gave defendant such notice in this case, see Compl., *ad damnum* clause § (c), any delinquent contributions (and related damages) accruing after plaintiffs commenced this action would be recoverable. That said, plaintiffs' amended default judgment motion papers do not seek to recover unpaid but subsequently accruing contributions, and plaintiffs are not entitled to additional damages that may have accrued *before* they filed their Complaint seeking $7,896.00 in unpaid contributions. See Bd. of Trs. of United Union of Roofers v. Best Roofing of N.J., Inc., No. 12-CV-1655 (SLT)(MDG), 2014 WL 1311809, at *5-6 (E.D.N.Y. Mar. 31, 2014); see also Upstate N.Y. Eng'rs Health Fund v. S. Buffalo Elec., Inc., 5:15-CV-903 (LEK/TWD), 2018 WL 4266040, at *2 (N.D.N.Y. Sept. 6, 2018) (citing cases), order vacated in part, appeal dismissed in part sub nom. Upstate N.Y. Eng'rs Health Fund by Harrigan v. S. Buffalo Elec., Inc., 17-3664, 2018 WL 5905587 (2d Cir. May 10, 2018).

Plaintiffs further argue that in accordance with the parties' Collective Bargaining Agreement and Collection Policy, their amended motion for default judgment properly seeks damages to which they are entitled by virtue of unpaid retirement contributions based upon an "estimated amount." See 10/18/19 Ltr. at 1-2. But this argument misrepresents the pleading's request for relief. With respect to plaintiffs' first and second claims for relief, the Complaint prays for judgment:

> (a) In the minimum sum of $7896.00 for unpaid Retirement contributions to the Fund for the period of November 1, 2017 through to and including May 31, 2018, plus interest from the date of the delinquency and liquidated damages of the principal amount due as set forth in the C.B.A. and Section 502(g)(D) of ERISA, 29 U.S.C. Section 1132 (g)(2)(D).

Compl., *ad damnum* clause § (a). That plaintiffs' amended default judgment papers now seek contributions based on an *estimated* amount does not remedy the fact that plaintiffs' Complaint

8

requests relief in the principal amount of $7,896.00 (plus interest and liquidated damages), and thus, provided no notice to defendant of the additional principal amount of damages that may have accrued before that pleading was filed.

There is another narrow exception to the strictures of Rule 54(c) that at least one court in this Circuit has recognized in the context of ERISA cases. In South Buffalo Electric, the Honorable Lawrence Kahn of the United States District Court for the Northern District of New York held that the plaintiffs were not limited to the amount explicitly requested in their complaint because their pleading put the defendants on notice of a potentially greater damages award than that pled. 2018 WL 4266040, at *3. Specifically, the complaint in that case noted that the plaintiffs based the sum requested on the remittance reports available to them at the time of filing, but that the plaintiffs were also requesting an audit of the defendants' records to assess the accuracy of those reports. See id. The pleading included specific language stating that, to the extent an audit revealed that the defendants had not submitted accurate reports, the plaintiffs were entitled to "any and all contributions that are determined to be due." Id.

By contrast, at no point during this litigation did plaintiffs seek to audit defendant's records, nor did they include language in their pleading to suggest that the contributions owed might be higher than the amount that was pled. While the Complaint asserts that defendant is liable for a "minimum sum" of $7,896.00 for the period in question, see Compl., *ad damnum* § (a), such "artful pleading" fails to satisfy the requirement of Rule 54(c) that the pleading provide sufficient notice of the amount at issue, see Best Roofing, 2014 WL 1311809, at *5 (rejecting the argument that almost identical language would provide a defendant with notice

9

under Rule 54(c))[3]; see also Silge, 510 F.3d at 160 (rejecting plaintiff's "argument that his demand for pre-judgment interest was implied by his [pleading's] generic request for 'such other and further relief which this Court deems just and proper'"). And even assuming *arguendo* that plaintiffs learned subsequent to the filing of their Complaint (as well as their initial default judgment papers) that the unpaid benefit contributions owed by defendants were higher than that initially pled, plaintiffs could (and should) have applied for leave to amend their pleading.[4] Amending the Complaint would have provided the requisite notice to defendants in accordance with Rule 54(c). In light of the aforementioned, plaintiffs' request for damages totaling $23,446.50 should be denied.[5]

---

[3] Portions of the Best Roofing opinion appear to contain a scrivener's error, mistakenly referencing Rule 5(c) of the FRCP (which concerns serving numerous defendants) rather than Rule 54(c). See Best Roofing, 2014 WL 1311809, at *5, *6. This Court construes that decision to address the impact of the latter provision on ERISA default judgment cases.

[4] Plaintiffs' October 18th letter offers no explanation as to whether and, if so, why they were unaware that defendant owed $23,446.50 in unpaid contributions at the time they filed their Complaint and/or at the time they filed their first motion for default judgment. See 10/18/19 Ltr. The Complaint, though dated June 22, 2018, was filed on July 2, 2018, see generally Compl., while the Remittance Report that plaintiffs rely upon in their amended default judgment papers is from October *2017* (and was stamped "entered" – presumably by plaintiffs – on December 27, 2017), see Remittance Report.

[5] Assuming *arguendo* that plaintiffs' demand for damages did not violate Rule 54(c), their calculation of unpaid contributions erroneously includes unpaid union dues. See Ramaglia Supp. Decl. ¶ 7. Under the CBA, the employer was required to pay union dues *to the union*, not to plaintiffs. See CBA art. XXXIX, § A ("All funds and dues remittances are due to the union by the tenth (10th) of each month[,]" with "[p]ayments [to be] made to the following: Union dues to Local 8A-28A[.]"); see also id. § B ("The administrative dues check-off deduction is 3% of weekly gross wages; plus $16.00 per capita dues per member per month; to be deducted from each member working for each signatory employer and to be submit [sic] to the Union[.]"). Although the Court's October 10th order to show cause questioned the viability of plaintiffs' claim for unpaid union dues, see 10/10/19 Order at 2, plaintiffs failed to address the issue, see 10/18/19 Ltr. Because plaintiffs "do not provide any basis for collecting dues on behalf of the union, they lack standing to collect unpaid union dues." Bd. of Trs. of the United Union of Roofers, Waterproofers & Allied Workers v. N.Y. Roofing Co., No. CV 2013-2865(ARR)(MDG), 2015 WL 1535373, at *3 (E.D.N.Y. Mar. 5, 2015) (citing cases), adopted, 2015 WL 1546447 (E.D.N.Y. Apr. 6, 2015); see Trs. of the Local 7 Tile Indus. Welfare Fund v. EAQ Const. Corp., No. 14 CV 4097(SJ)(CLP), 2015 WL 5793597, at *11 (E.D.N.Y. Sept. 30, 2015). Such dues cannot be collected as unpaid benefit contributions, and therefore, apart from the Rule 54 violation, would have to be excluded from any total sum awarded.

**B. Plaintiffs Proffer Insufficient Evidence to Support Even a Reduced Award of $7,896**

This Court must now determine whether plaintiffs should recover the $7,896.00 in unpaid contributions for the period from November 1, 2017 through May 31, 2018, as pled in plaintiffs' Complaint, and as was sought in plaintiffs' initial motion for default judgment. See Compl., *ad damnum* clause § (a); Kugielska Decl. ¶ 13. For the reasons set forth in greater detail below, the Court is unable to recommend an award of $7,896.00 in unpaid contributions, as plaintiffs' motion papers suffer from an additional flaw: i.e., the Collection Policy that plaintiffs rely upon to calculate damages[6] is not incorporated into the operative Collective Bargaining Agreement; therefore, the single remittance report submitted to the Court pursuant to that Collection Policy does not constitute a legally cognizable basis on which to award the amount pled in the Complaint.

When plaintiffs filed their amended motion seeking $23,446.50 in unpaid contributions, they proffered the following documents in support of their demand: (1) the CBA; (2) a supplemental declaration by Joseph Ramaglia, the Fund Administrator of the Metal Polishers Local 8A-28A Funds, describing the method by which plaintiffs computed the principal amount of unpaid contributions, see Ramaglia Supp. Decl. ¶¶ 6-7, and (3) the Funds' Collection Policy. That Policy states, in pertinent part, that "[i]n the event an Employer fails to submit required remittance reports when due," the Funds:

> are permitted to: compute the sum due for any month by adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) reports submitted by the Employer. The total number of hours for the unreported period as determined aforesaid shall be multiplied by the current contribution rate, and the amount of contributions so computed shall be deemed the amount due from the Employer, together with any sums calculated pursuant to [the] CBA and standard collection policy for the purposes of any legal proceeding.

---

[6] See Policy for Collection of Delinquent Contributions ("Collection Policy"), DE #20-2 (Ex. B).

<u>See</u> Collection Policy § 2, ¶ 5.  In connection with their calculation of the outstanding benefit contributions, plaintiffs submitted a single remittance report – from October 2017 – documenting the number of individuals employed by defendant for that month and the numbers of hours worked by those employees during that same period.  <u>See</u> Remittance Report.  According to plaintiffs, this Remittance Report represents the "largest number of hours reported in the previous twelve (12) reports submitted by the Employer[,]" Ramaglia Supp. Decl. ¶ 6, and was being proffered in accordance with the Collection Policy, <u>see id.</u>

Plaintiffs' reliance on the October 2017 Remittance Report to calculate their damages is misplaced, for several reasons.  As an initial matter, the Collection Policy permits the funds to extrapolate, from the hours reported in a single month from the preceding 12 months, the total number of hours for the unreported period, if and only if the "[e]mployer fails to submit required remittance reports when due[.]"  Collection Policy ¶ 5.  Here, however, plaintiffs have not alleged that defendant failed to submit remittance reports for the seven-month period at issue in this case; indeed, as Judge Chen observed, the Complaint alleges that the "Trustee's demand for $7,896 in damages is 'based upon employer remittance reports.'"  7/312/19M&O at 8 n.5 (quoting Compl. ¶ 16).  Absent any showing by plaintiffs that defendant failed to furnish them with the required remittance reports, plaintiffs may not invoke the extrapolation provision of the Collection Policy, even assuming that the defendant was bound by the Policy.

In any event, plaintiffs' extrapolation of their damages from a single remittance report erroneously assumes that "[e]mployer signatories to the Union's C.B.A., such as Nu Look, are bound to the terms of the Collection Policy."  Ramaglia Supp. Decl. ¶ 6.  In fact, an examination of the CBA demonstrates that while Nu Look is bound by the CBA, it is not bound by the Collection Policy.  The CBA, which was signed on July 20, 2017 by representatives of

12

defendant and the Union, makes no explicit reference to the Collection Policy.  See generally CBA.  The Collection Policy, which is dated June 20, 2016, appears to be a "stand-alone, unsigned document that states plaintiffs' policies regarding the collection of unpaid contributions."  Trs. of Metal Polishers Local 8A-28A Funds v. Remco Maint., LLC, 17-CV-2577 (RJD), 2018 WL 2063184, at *3 (E.D.N.Y. Jan. 11, 2018), adopted, Order by Judge Raymond J. Dearie Adopting Report and Recommendation (Feb. 9, 2018).   Here, as in Remco, the CBA fails to provide a reasonable basis for incorporating the terms of the Collection Policy.  See id. (holding the same).  Therefore, plaintiffs may not rely on a single remittance report to establish the amounts accruing over a subsequent period of seven months.

In the absence of a binding provision authorizing alternative means of estimating ERISA damages, courts in this Circuit frequently look to the remittance reports spanning the unpaid benefits period.  See, e.g., Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Genrus Corp., 18 CV 4232 (AMD)(CLP), 2019 WL 4604972, at *4 (E.D.N.Y. Sept. 6, 2019) (reviewing the remittance reports attached to the plaintiffs' motion for default judgment in awarding damages), adopted, 2019 WL 4602880 (E.D.N.Y. Sept. 23, 2019); Trs. of Amalgamated Indus. v. Surprise Plastics, Inc., No. CV 10-3399(FB)(VVP), 2011 WL 4536967, at *3 (E.D.N.Y. Sept. 2, 2011) (relying on the remittance reports submitted with plaintiffs' motion papers in order to evaluate the accuracy of plaintiffs' summary of the contribution balance due), adopted, 2011 WL 4529350 (E.D.N.Y. Sept. 27, 2011).  Here, despite the District Court's express reference to defendant's remittance reports and to plaintiffs' need to "submit such supporting documentation to the Court" to substantiate their request for damages, see 7/31/19 M&O at 8 n.5, plaintiffs have not submitted for this Court's review any of the seven remittance reports for the delinquent contribution period

13

at issue in this case (November 2017 through May 2018).

To be sure, where, as here, the plaintiffs do not proffer remittance reports or seek to enforce their right to an audit, courts may look to any applicable formulae set forth in the governing Declarations of Trust dictating how delinquent contributions are to be calculated. See, e.g., Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383 (NGG) (VMS), 2014 WL 1311709, at *4 (E.D.N.Y. Mar. 28, 2014) ("In the event that Defendant failed to submit remittance reports or be audited, or both, the Trust Agreement provides that Plaintiffs may collect contributions on the basis of an estimated audit using various formulae described in the Trust Agreement."); Gesualdi v. Fortunata Carting Inc., 5 F.Supp.3d 262, 268 (E.D.N.Y. 2014) ("In their motion for default judgment, plaintiffs seek damages for unpaid contributions which they calculate in three different ways: using the amounts reflected in remittance reports submitted by defendant; using a formula provided in the Trust Agreement for certain periods in which no remittance reports were submitted; or relying on the results of an audit conducted."). In the instant case, plaintiffs neither provided the Court with any trust documents nor relied on them to justify their demand for damages.[7]

Plaintiffs' many deficiencies are especially glaring given their multiple opportunities to submit the requisite documents to support their request for damages, either as attachments to their Complaint, with their initial motion for default judgment, with their amended motion for default judgment, or as part of their October 18, 2019 supplemental submission. And yet, without explanation, plaintiffs failed to do so. In the absence of any of the relevant seven

---

[7] The CBA Agreement provides that "the Trustees shall have the authority to have a certified public accountant audit the payroll, wage, and other relevant records of the Employer for the purpose of determining the accuracy of contributions[.]" CBA art. XIX ¶ 5. Nothing in plaintiffs' submissions suggests that plaintiffs conducted an audit of defendant, nor have plaintiffs sought a court order to enforce this contractual provision.

14

monthly remittance reports or the operative Trust Agreement(s), this Court is in no better position to calculate the outstanding contributions owed than was Judge Chen after plaintiffs initially moved for default judgment. See 7/31/19 M&O at 8 (noting that plaintiffs' 1/11/19 Table in support of plaintiffs' claim for $7,896.00 in delinquent contributions did not "independently support the Trustees' calculation of hours or contributions owed.").

Accordingly, this Court respectfully recommends that the District Court decline to award plaintiffs *any* delinquent contributions and, "[b]ecause the interest owed on delinquent contributions and the amount of liquidated damages provided for under ERISA necessarily depend on an accurate accounting of the amount of delinquent contributions owed," 7/31/19 M&O at 9, that plaintiffs' request for such damages likewise be denied in its entirety.

### III. Attorneys' Fees and Costs

Plaintiffs' amended motion also seeks an award of attorneys' fees in the sum of $2,900.00 and court costs and disbursements in the sum of $465.00, see Proposed Judgment, those sums already awarded to plaintiffs by Judge Chen, see 7/31/19 M&O at 11 (awarding plaintiffs $2,900.00 in attorneys' fees and $465.00 in costs). Although invited by Judge Chen to do so, plaintiffs did not submit "the necessary billing records to support [any] request for additional attorneys' fees." Id. at 9 n.8. Accordingly, and in light of plaintiffs' failure to establish their entitlement to any delinquent contributions, the District Court should award no more than the fees and costs specified in its 7/31/19 M&O 9-11.[8]

---

[8] To the extent that the District Court adopts this Report and Recommendation and also opts to revisit its prior fee award, this Court notes that (1) an award of $2,900.00 would generate fees for plaintiffs' counsel without a corresponding award to the plaintiffs, and (2) the failure to obtain an award of unpaid contributions and related damages is predicated, in substantial part, on errors and omissions of plaintiffs' counsel.

15

## **CONCLUSION**

For all of the foregoing reasons, this Court respectfully recommends that plaintiffs' amended motion for default judgment be denied in its entirety, and that plaintiffs not be awarded benefit fund contributions, interest, liquidated damages, or additional attorneys' fees.

Any objections to this Report and Recommendation must be filed with the Honorable Pamela K. Chen on or before **March 2, 2020**.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a)(1), 72(b)(2); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is requested to enter this Report and Recommendation into the ECF system and to transmit copies by Federal Express to defendant at the following addresses:

Nu Look, Inc.
708 Broadway
Amityville, NY 11701

Nu Look, Inc.
987 Haverstraw Road
Suffern, New York 10901

**SO ORDERED.**

**Dated:**   Brooklyn, New York
February 14, 2020

/s/ *Roanne L. Mann*
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**