```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TRUSTEES OF THE METAL POLISHERS
LOCAL 8A–28A FUNDS,
                                                              MEMORANDUM & ORDER
                    Plaintiff,                                 18-CV-3816 (PKC) (RLM)

       - against -

NU LOOK INC. and JASON TOKARSKI,
Individually,

                    Defendants.
-------------------------------------------------------x
```

PAMELA K. CHEN, United States District Judge:

On July 2, 2018, Plaintiff Trustees of the Metal Polishers Local 8A–28A Funds ("Plaintiff")[1] commenced this action against Defendants Nu Look Inc. ("Nu Look") and Jason Tokarski for alleged violations of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and § 502(a)(3), and § 515 of the Employee Retirement Income Security Act (the "ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145. (*See generally* Complaint ("Compl."), Dkt. 1.) Nu Look defaulted in this matter, and on July 31, 2019, this Court granted in part and denied in part Plaintiff's motion for default judgment, finding liability but concluding that Plaintiff had not submitted adequate documentation to support its damages request. (Memorandum and Order ("M&O"), Dkt. 13.) Plaintiff submitted an amended motion for default judgment, which this Court referred to the Honorable Roanne L. Mann, who issued a report and recommendation ("R&R") on February 14, 2020, recommending, *inter alia*, that Plaintiff be awarded no more than the $2,900 in reasonable attorneys' fees and $465 in costs specified in this Court's July 31, 2019 Memorandum and Order. (Report and Recommendation ("R&R"), Dkt. 24, at 15 (citing M&O,

---

[1] The Court refers to Plaintiff Trustees of the Metal Polishers Local 8A–28A Funds in the singular, in recognition of their representative capacity for the Fund.

1

Dkt. 13, at 12).) Plaintiff first filed objections to the R&R (Plaintiff's Objections ("Pl.'s Objs."), Dkt. 25), and then filed a notice of voluntary dismissal, seeking to dismiss this case without prejudice (Dkt. 27).

Currently pending before the Court are its Order to Show Cause ("OTSC") as to why Plaintiff's Notice of Voluntary Dismissal should not be vacated in light of the current posture of the case, and Plaintiff's objections to the R&R. For the reasons contained herein, the Court vacates Plaintiff's Notice of Voluntary Dismissal, rejects Plaintiff's objections, and adopts Judge Mann's R&R in its entirety.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of this action as thoroughly recited in its July 31, 2019 M&O (Dkt. 13) and Judge Mann's R&R (Dkt. 24), incorporates those facts herein, and summarizes only the relevant history of the present motions.

Plaintiff filed this action on July 2, 2018, alleging that Defendants had failed to make contributions to Plaintiff's jointly administered multi-employer labor management trust funds (the "Funds") as required by Nu Look's collective bargaining agreement ("CBA"). (*See* Compl., Dkt. 1.) Plaintiff is a fiduciary of the Funds, which operates as an employee benefit plan under ERISA and provides fringe benefits to eligible employees, retirees, and their dependents. (*See id.* ¶ 6.) Nu Look, a party to the CBA with the Metal Polishers Production and Novelty Workers Local Union 8A–28A (the "Union"), contributes to the Funds on behalf of its employees, retirees, and their dependents pursuant to its CBA with the Union. (*See id.* ¶¶ 8, 13; CBA, Dkt. 12-1, at ECF[2] 29.)

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

2

Plaintiff sought to recover from Nu Look delinquent contributions to the Funds with interest, liquidated damages, attorneys' fees, and court costs. (*See* Compl., Dkt. 1, ¶ 18.) The CBA requires Nu Look to submit contribution reports, with the hours worked by each of its employees and the amount of contributions due according to rate schedules set forth in the CBA. (*Id.* ¶ 13.) Nu Look must then submit monetary contributions to the Funds in accordance with the CBA rate schedules. (*Id.*) Between November 1, 2017 and May 31, 2018, however, Nu Look failed to remit the required contribution reports and retirement benefit contributions to the Funds. (*Id.* ¶ 15.) According to the complaint, the minimum amount that Nu Look owes to the Funds in unpaid contributions for this period is $7,896. (*Id.*)

On July 12, 2018, Plaintiff submitted an affidavit, indicating that Nu Look was served on July 10, 2018. (*See* Affidavit of Service, Dkt. 7.) To date, Nu Look has failed to appear, plead, or otherwise respond to the complaint. Plaintiff requested a certificate of default as to Nu Look on January 8, 2019 (Request for Certificate of Default, Dkt. 10), and the Clerk of Court entered default against Nu Look on January 10, 2019 (Certificate of Default, Dkt. 11).

On January 11, 2019, Plaintiff filed a motion for default judgment, seeking a total of $13,243.32 in damages, consisting of: (1) $7,896 for delinquent fund contributions; (2) $403.12 in interest; (3) $1,579.20 in liquidated damages; (4) $2,900 in attorneys' fees; (5) and $465 in court costs. (*See* Declaration in Support of Plaintiff's Motion for Entry of Default Judgment and Damages ("Kugielska Decl."), Dkt. 12-1, ¶ 24.) On July 31, 2019, the Court granted Plaintiff's motion for default in part and denied it in part. *Trs. of Metal Polishers Local 8A–28A Funds v. Nu Look Inc.*, No. 18-CV-3816 (PKC) (RLM), 2019 WL 3500908, at *6 (E.D.N.Y. July 31, 2019). The Court found that Plaintiff had established Nu Look's liability under the ERISA. *Id.* at *3. As to damages, the Court concluded that Plaintiff had established the amount of attorneys' fees and

3

costs, but not its request for delinquent contributions, interest, and liquidated damages; the Court denied that aspect of Plaintiff's damages request without prejudice to renew. *Id.* at *4–6. Specifically, the Court found that Plaintiff had not provided "any information about the number of individuals employed by Nu Look during the relevant time period or in the prior months, the classification of Nu Look's employees for purposes of the contribution schedule, or the number of hours worked by Nu Look's employees during the relevant time period." *Id.* at *4. Instead, Plaintiff had simply submitted a table listing the hours worked by Nu Look employees between November 2017 and May 2018 with a calculation of total delinquent contributions owed per month during this period. *Id.* The Court accordingly concluded that there was no information to "independently support [Plaintiff's] calculation of hours or contributions owed." *Id.*

On October 7, 2019, Plaintiff filed an amended motion for default judgment, increasing the amount in damages sought to $23,446.50 in unpaid contributions, in addition to $1,640.00 in interest and $4,689.30 in liquidated damages. (*See* Amended Motion for Default Judgment, Dkt. 19.) The Court referred the amended motion to Judge Mann on October 8, 2019. (Oct. 8, 2019 Order.) Judge Mann issued an R&R on February 14, 2020, recommending that Plaintiff's amended motion for default judgment be denied in its entirety, and that this Court decline to award any delinquent benefit fund contributions, interest, liquidated damages, or additional attorneys' fees. (R&R, Dkt. 24, at 16.) Judge Mann found that the amended motion for default judgment violated Federal Rule of Civil Procedure ("FRCP") 54(c), as the Rule "limits a plaintiff's default judgment recovery to the relief sought in the complaint." (*Id.* at 7.) Judge Mann further reasoned that even if Plaintiff had learned that the unpaid benefit contributions owed by Nu Look were higher than pled in the complaint, it "could (and should) have applied for leave to amend their pleading." (*Id.* at 10.) Therefore, Judge Mann recommended denying Plaintiff's demand for unpaid contributions

4

totaling $23,446.50. (*Id.*) Next, Judge Mann recommended that Plaintiff should not be able to recover $7,896.00 in unpaid contributions from November 1, 2017 to May 31, 2018 as pled in the complaint. (*Id.* at 11.) Because the collection policy that Plaintiff relied upon to calculate damages was not incorporated into the operative CBA, "the single remittance report submitted to the Court pursuant to [the Policy for the Collection of Delinquent Contributions (the "Collection Policy")] does not constitute a legally cognizable basis on which to award the amount pled in the complaint." (*Id.*) Finally, Judge Mann recommended that in the absence of additional billing records to support Plaintiff's request for additional attorneys' fees, the Court should not award any more fees and costs beyond those it had previously specified in its order. (*Id.* at ECF 15.) On March 2, 2020, Plaintiff filed objections to Judge Mann's recommendations, requesting that the Court grant Plaintiff damages as set forth in its original motion for default judgment. (Plaintiff's Objections ("Pls.' Objs."), Dkt. 25, at ECF 3.) Nine days later, on March 11, 2020, Plaintiff filed a Notice of Voluntary Dismissal. (Dkt. 27.)

## LEGAL STANDARDS

### I. Magistrate Judges' Reports and Recommendations

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). With respect to a magistrate judge's recommendation on a dispositive matter, the Court reviews *de novo* those determinations as to which a party has specifically objected. *See id.* ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). However, "objections that are merely perfunctory responses

argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke *de novo* review." *Frankel v. New York City*, No. 06-CV-5450 (LTS) (DFE), 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009) (internal quotation marks, alterations, and citation omitted). Accordingly, "[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). Moreover, "[i]n this district and circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Illis v. Artus*, No. 06-CV-3077 (SLT) (KAM), 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) (internal quotation marks and citations omitted) (collecting cases).

**II.     Default Judgment**

The procedure for entry of a default judgment is governed by FRCP 55(a), which provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Accordingly, courts in this Circuit have outlined a two-step process: "first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). The entry of default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.*; *see also Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (noting that default judgments "track[] the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party"); *United States v. DiPaolo*, 466 F. Supp. 2d

476, 482 (S.D.N.Y. 2006) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." (internal quotation and citations omitted)). Second, the entry of a default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128.

"[T]he decision to grant a motion for a default judgment lies in the sound discretion of the trial court." *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (citing *Shah v. N.Y. State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A district court deciding a motion for default judgment "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citation omitted). Prior to the entry of a final default judgment, a plaintiff must prove damages. *Kingvision Pay-Per-View Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 513 (E.D.N.Y. 2006). FRCP 55 provides that a court "may conduct hearings . . . to determine the amount of damages" appropriate in a default proceeding. Fed. R. Civ. P. 55(b)(2)(B). The Court, in its discretion, need not hold a hearing "as long as it ensure[s] that there [i]s a basis for the damages specified in a default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Kingvision Pay-Per-View Ltd.*, 429 F. Supp.2d at 513. In other words, "[e]ven after a defendant has defaulted, a plaintiff must 'establish that on the law it is entitled to the relief it seeks, given the facts as established by the default.'" *Jarvis v. N. Am. Globex Fund, L.P.*, No. 11-CV-742 (ADS) (WDW), 2011 WL 4804897, at *1 (E.D.N.Y. Sept. 13, 2011) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)).

## DISCUSSION

**I.      Plaintiff's Notice of Voluntary Dismissal under Rule 41(a)**

The Court vacates Plaintiff's Notice of Voluntary Dismissal, seeking to dismiss this matter without prejudice, as impermissible under FRCP 41(a)(1)(A)(i).  It does not appear that the Supreme Court or the Second Circuit have considered the applicability of FRCP 41(a) to a matter where a plaintiff seeks to voluntarily dismiss an action after a Magistrate Judge has considered a default judgment motion and provided an R&R to the District Judge, particularly when there has already been a finding of liability.  However, as discussed below, the Court has the benefit of decisions by several courts in this district that have addressed the same or similar situation as presented here.

Rule 41 provides, in part:

(a) **Voluntary Dismissal**

(1) *By the Plaintiff.*

(A) *Without a Court Order*.  Subject to [applicable federal rules] and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

(B) *Effect*.  Unless the notice or stipulation states otherwise, the dismissal is without prejudice.  But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

(2) *By Court Order; Effect*.  Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.  If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent

> adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a) (emphases in original). The policy and purpose of the rule is to "limit a plaintiff's ability to dismiss an action" and "curb abuses" of prior rules that would permit dismissals as a matter of right until a verdict was entered. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990). As the Supreme Court explained in *Cooter*,

> [w]here state statutes and common law gave plaintiffs expansive control over their suits, [FRCP] 41(a)(1) preserved a narrow slice: It allowed a plaintiff to dismiss an action without the permission of the adverse party or the court only during the brief period before the defendant had made a significant commitment of time and money.

*Id.*; *see also Littman v. Bache & Co.*, 252 F.2d 479, 480 (2d Cir. 1958) ("[Rule 41(a)] was intended to limit the right of dismissal to an early stage of the proceedings, thereby curbing the abuse of the right which had previously been possible." (citation omitted)); *Hudson Eng'g Co. v. Bingham Pump Co.*, 298 F. Supp. 387, 388 (S.D.N.Y. 1969) ("It must be remembered that the purpose of Rule 41(a) was to eliminate the evils resulting from the unqualified right of a plaintiff to take a voluntary nonsuit at any stage of the proceeding before pronouncement of judgment and after the defendant had incurred substantial expense or acquired substantial rights." (internal quotation marks and citations omitted)).

In the context of deciding an appeal of sanctions, the Second Circuit has noted that "a plaintiff who has not been served with an answer or motion for summary judgment has an 'unfettered right voluntarily and unilaterally to dismiss an action.' Dismissal of a suit may be disruptive and annoying, but it is permitted by the rules." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (quoting *Thorp v. Scarne*, 599 F.2d 1169, 1175 2d Cir. 1979)). The issue before the Second Circuit in *Wolters* was whether the plaintiff's law firm

9

had acted in "bad faith," by voluntarily dismissing the case "so [as] to flee the jurisdiction." *Id.* at 114–15.

In *Harvey Aluminum Inc. v. American Cyanamid Co.*, the Second Circuit upheld the vacatur of a voluntary notice of dismissal filed after the district court had adjudicated a motion for a preliminary injunction and found it unlikely that the plaintiffs would prevail on the merits of their claims. 203 F.2d 105 (2d Cir. 1953). The Circuit held that, although a notice of voluntary dismissal was submitted "before any paper labeled 'answer' or 'motion for summary judgment' was filed, a literal application of [FRCP] 41(a)(1) to the present controversy would not be in accord with its essential purpose of preventing arbitrary dismissals after an advanced stage of a suit has been reached." 203 F.2d at 108 (collecting cases). It is without question, however, that *Harvey Aluminum* "has not been well received," and "subsequent cases have almost uniformly either distinguished [that case], limiting the case to its particular factual setting, or forthrightly rejected it as poorly reasoned." *Thorp v. Scarne*, 599 F.2d at 1175 (collecting cases). In *Thorp*, the Circuit considered again the logic of *Harvey Aluminum* in a case where the

> plaintiff [had] filed a notice of dismissal merely 13 days after initiating the action by filing his complaint. The district court had conducted a short untranscribed hearing, lasting less than two hours, during which no testimony was given. Only three causes of action of the seven alleged in the complaint were addressed in either argument or memoranda of law by either side.

*Id.* at 1176 (footnote omitted). The Circuit found that while *Harvey Aluminum*

> may have furthered one purpose of Rule 41(a)(1)(i), that of confining dismissals to an early stage of the proceedings, it did so at the expense of a concurrent and perhaps equally important purpose, that of establishing a bright-line test marking the termination of a plaintiff's otherwise unfettered right voluntarily and unilaterally to dismiss an action.

*Id.* at 1175. In reversing the district court's vacatur of the Notice of Dismissal, the panel in *Thorp* considered that

10

> if *Harvey Aluminum* is broadly read as proscribing dismissal under Rule 41(a)(1)(i) whenever the merits of a controversy have been presented to the district court, the result would be a flat amendment of Rule 41(a)(1) to preclude dismissal by notice in any case where preliminary injunctive relief is sought. We must agree with the view that if such a comprehensive modification of the Rule is desirable, the request must be addressed to the Supreme Court and to Congress. To date, although Rule 41 has been amended four times, such a comprehensive modification has not been attempted.

*Id.* at 1175–76 (internal quotation marks, citations, and alterations omitted). However, in reaching that conclusion, the Circuit limited its holding in two ways of import. First, it did not expressly overturn *Harvey Aluminum*; rather the panel limited its holding to "cases falling short of the extreme exemplified" in that case. *Id.* at 1176. Second, it allowed that "there may be a point in legal proceedings where the purpose of Rule 41(a)(1)(i) would be better served by abandoning a literal interpretation." *Id.*

Courts within this district have found that the posture of this case is exactly the type of "extreme" proceedings contemplated by the Second Circuit in *Harvey Aluminum* and *Thorp*. In *Poparic v. Jugo Shop*, No. 08-CV-2081 (KAM) (JO), 2010 WL 1260598 (E.D.N.Y. Mar. 31, 2010), the Honorable Kiyo A. Matsumoto adopted the R&R of the Honorable James Orenstein, Magistrate Judge, that recommended denying Plaintiff's motion to dismiss the matter without prejudice. After discussing the same case law outlined *supra*, Judge Matsumoto held that "notwithstanding the language of" FRCP 41(a)(1)(A), "and the fact that neither an answer or summary judgment motion ha[d] been filed, plaintiff's filing of a default judgment motion had several implications, one of which was to serve as the functional equivalent of a motion for summary judgment," thereby precluding the plaintiff from dismissing the matter without prejudice. *Id*. at *2–3 (internal quotation marks and record citation omitted). Judge Matsumoto first decided that "at this advanced stage," such an action would be inconsistent with the purpose of the Federal Rules of Civil Procedure's direction that the Rules "should be construed and administered to secure just, speedy,

11

and inexpensive determination of every action and proceeding." *Id.* at *7 (quoting, *inter alia*, Fed. R. Civ. P. 1). Moreover, "permitting plaintiff voluntarily to dismiss the Complaint without prejudice under the circumstances would undermine the purposes of promoting efficiency and fairness in the expeditious administration of justice that Congress sought to achieve through the Federal Magistrates Act, 28 U.S.C. §§ 631 *et seq.*" *Id.* (collecting cases). "[H]ad plaintiff's default judgment motion not been referred for a report and recommendation, [the] plaintiff would not have had the opportunity to dismiss the action under Rule 41(a)(1) even if plaintiff was dissatisfied with the disposition." *Id.* (citation omitted).

Other courts in this district have found Judge Matsumoto's holding in *Poparic* persuasive and applicable to similar circumstances. In *Century Surety Co. v. Vas & Sons Corp.*, the plaintiff moved for default judgment and the Magistrate Judge issued an R&R recommending that the court decline to enter a declaratory judgment in favor of the plaintiff as to one specific claim. No. 17-CV-5392 (DLI) (RLM), 2018 WL 4804656, at *1 (E.D.N.Y. Sept. 30, 2018). After the plaintiff filed a motion to dismiss the singular claim and filed an objection to the R&R, the district court observed that the plaintiff had "sought and obtained the Court's careful consideration of the merits of its Complaint and default judgment motion, but, being unhappy with the results of its litigation, sought dismissal without prejudice." *Id.* at *3. The district court denied the plaintiff's motion for voluntary dismissal, overruled plaintiff's objections to the R&R, and adopted the R&R in its entirety. *Id.* at *7. Similarly, in *J & J Sports Productions, Inc. v. Hot Shotz Sports Bar, Inc.*, a magistrate judge issued an R&R denying the defendant's motion for default judgment as to two defendants. No. 17-CV-4170 (DLI) (VMS), 2018 WL 4627666, at *1 (E.D.N.Y. Sept. 27, 2018). The plaintiff filed objections to that portion of the R&R, and, alternatively, requested leave to amend the complaint if the court overruled its objections. *Id.* The court denied the plaintiff's leave

12

to amend, overruled plaintiff's objections, and adopted the R&R in its entirety. Relying on Judge Matsumoto's reasoning in *Poparic*, the court stated that the plaintiff was acting in bad faith. *Id.* at *3–4. Specifically, the court found that "by requesting leave to amend only after the magistrate judge issued her [a]mended R&R, [p]laintiff seeks two bites at the apple." *Id.* at *3. Granting leave to amend "*after* a defendant has defaulted would be fundamentally unfair." *Id.* at *4 (emphasis in original).

The circumstances in this case are even more "extreme" than the situations presented in the other cases in this district. *Cf. Thorp*, 599 F.2d at 1176. Not only has Plaintiff sought to voluntarily dismiss this case without prejudice following an R&R on a default judgment motion, it seeks to do so after the Court, both at the District and Magistrate Judge levels, has carefully considered the facts of the matter, found liability and analyzed Plaintiff's damages request, not once, but twice. The timing of Plaintiff's Notice, filed less than a month after Judge Mann carefully and thoroughly considered, and ultimately rejected, the merits of its amended damages request, is a clear attempt by Plaintiff to seek dismissal after "being unhappy with the results of its litigation." *Cf. Century Sur. Co.*, 2018 WL 4804656, at *3.

Plaintiff's attempts to distinguish its circumstances from that of *Poparic*, by noting "Defendant's alleged willingness to assent to an audit," a point at issue in Judge Mann's R&R, thereby constituting "a significant change in circumstances affecting the accuracy of the amount of damages that the Funds are entitled to for the contribution period" (Dkt. 28, at 2), are of no avail. The Court first notes that Plaintiff had *multiple* opportunities during the stages of this litigation to seek an audit from Defendant. (*See* R&R, Dkt. 24, at 9 (describing that "at no point during this litigation did plaintiffs[3] seek to audit defendant's records").) Moreover, there are

---

[3] In contrast to this M&O, the R&R refers to the Plaintiff Trustees in the plural.

13

mechanisms within the Federal Rules to ask the Court to reconsider a prior decision due to a change of circumstance, including, but not limited to FRCP 60. *See* Fed. R. Civ. P. 60(b)(2) (permitting the court to "relieve a party or its legal representative from . . . [an] order . . . [due to] newly discovered evidence"). A change of circumstance does not warrant a full dismissal of an already-decided matter, permitting Plaintiff a second proverbial bite at the apple.

For these reasons, the Court vacates Plaintiff's Notice of Voluntary Dismissal (Dkt. 27).

## II. Damages

Having concluded that Plaintiff cannot voluntarily dismiss without prejudice at this stage, the Court now overrules Plaintiff's objections to Judge Mann's R&R and adopts the R&R in its entirety.

As the R&R correctly noted,

> [a] plaintiff that has established liability under Section 515 of [the] ERISA is entitled to an award of "(A) unpaid contributions," (B) "interest on the unpaid contributions," "(C) an amount equal to the greater of—(i) interest on the unpaid contributions, or [ii] liquidated damages provided for under the plan," (D) "reasonable attorney's fees and costs," and (E) "such other legal or equitable relief as the Court may deem appropriate."

(R&R, Dkt. 24, at 5 (quoting 29 U.S.C. § 1132(g)(2)).) The R&R first concluded that "Plaintiffs' amended default judgment motion violates [FRCP] 54(c)" as it asks for more money than that pleaded, and the Complaint did not include language "to suggest that the contributions owed might be higher than the amount that was pled." (*Id.* at 6–9.) The R&R then found that Plaintiffs did not proffer sufficient evidence to support even the reduced award originally pleaded: $7,896.00 in unpaid contributions. (*Id.* at 11–15.) Finally, the R&R found that, "in light of plaintiffs' failure to establish their entitlement to any delinquent contributions," and their failure to submit billing records to support a request for additional attorneys' fees, this Court "should award no more than the fees and costs" already specified in its prior Order. (*Id.* at 15.)

14

Both of Plaintiff's objections are tied to its understanding of the import of the Collection Policy, which is its policy for collecting delinquent contributions. (Pl.'s Objs., Dkt. 25, at 2–3.) Plaintiff first objects to Judge Mann's conclusion that the Collection Policy is "not a stand-alone document" and is binding upon Nu Look because the "parties' CBA incorporates the authority of the Funds' Trustees." (*Id.* at 1–2.) However, the Court finds no error in Judge Mann's conclusion that the Collection Policy appears to be a stand-alone document that is not binding on Nu Look. (R&R, Dkt. 24, at 11.) The CBA was signed by both parties on July 20, 2017 and "makes no explicit reference to the Collection Policy," which was dated June 20, 2016. (*Id.* at 12–13.) As Judge Mann noted, "the CBA fails to provide a reasonable basis for incorporating the terms of the Collection Policy." (*Id.* at 13 (citing *Trs. of Metal Polishers Local 8A-28A Funds v. Remco Maint., LLC*, No. 17-CV-2577 (RJD), 2018 WL 2063184, at *3 (E.D.N.Y. Jan. 11, 2018)).)

In Plaintiff's second objection, it argues that it is "authorized to assess damages in accordance with the . . . extrapolation provision in the Collection Policy because" Nu Look has failed to provide it with the reports and accounting of the retirement benefit funds contributions owed to it. (Pl.'s Objs., Dkt. 25, at 2.) As already discussed, the Court finds no error in Judge Mann's determination that the Collection Policy is not the operative document. Moreover, the R&R aptly described two reasons why reliance on the single October 2017 Remittance Report to extrapolate and calculate damages was "misplaced": (1) even assuming Nu Look was bound by the Collection Policy, Plaintiff failed to allege that Nu Look did not submit remittance reports,[4] a requirement to invoke it (R&R, Dkt. 24, at 12); and (2) in the absence of a binding provision

---

[4] This Court noted the same in its initial decision in this matter. *See Trs. of Metal Polishers Local 8A-28A Funds*, 2019 WL 3500908, at *4 n.5 ("The complaint also states that the Trustees' demand for $7,896 in damages is based upon employer remittance reports." (internal quotation marks and record citation omitted)).

15

authorizing a means of estimating damages, courts in this Circuit look to the remittance reports spanning the period of unpaid benefits, which Plaintiff failed to submit despite multiple opportunities (*id.* at 13–15 (collecting cases)). The Court finds no error in Judge Mann's assessment of the facts or application of the relevant case law.

For these reasons, the Court rejects both of Plaintiff's objections to Judge Mann's thoroughly reasoned R&R and adopts it in full.

## CONCLUSION

For all of the reasons contained herein, Plaintiff's Notice of Voluntary Dismissal is vacated, and the Report and Recommendation of the Honorable Roanne L. Mann is adopted in full. As recommended by Judge Mann, the Court declines to increase Plaintiff's prior award of damages and attorneys' fees beyond the amount specified in the Court's July 31, 2019 Memorandum & Order (Dkt. 13). Accordingly, the Clerk of Court is respectfully requested to enter judgment in favor of Plaintiff in the total amount of $2,900 in attorneys' fees and $465 in costs.

The Court takes this opportunity to dismiss the complaint as to Defendant Tokarski. He was never served with the summons in this matter, and on December 17, 2018, Judge Mann ordered Plaintiffs to "show cause, in writing, by December 26, 2018, why the case should not be dismissed for lack of prosecution, pursuant to Fed. R. Civ. P. 41(b)[,]" as to Defendant Tokarski. (Dec. 17, 2018 Order.) Plaintiff was also warned that "[f]ailure to comply with this Order shall result in a recommendation that the case be dismissed with prejudice." (*Id.*) Because Plaintiff never responded to that show cause order, the complaint in this matter is also dismissed with prejudice as to Defendant Tokarski.

Accordingly, the Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 29, 2020
       Brooklyn, New York